1

2                                                          FILED IN THE
                                                         U.S. DISTRICT COURT
                                                         EASTERN DISTRICT OF WASHINGTON

3                                                          Feb 04, 2022

4                                                          SEAN F. McAVOY, CLERK

5                    **UNITED STATES DISTRICT COURT**

6                    **EASTERN DISTRICT OF WASHINGTON**

7    VICTORIA P.,[1]                        No. 4:20-cv-05144-MKD

8                    Plaintiff,             ORDER DENYING PLAINTIFF'S
                                            MOTION FOR SUMMARY
9          vs.                              JUDGMENT AND GRANTING
                                            DEFENDANT'S MOTION FOR
10   KILOLO KIJAKAZI, ACTING                SUMMARY JUDGMENT
     COMMISSIONER OF SOCIAL
11   SECURITY,                              ECF Nos. 19, 23

12                   Defendant.

13        Before the Court are the parties' cross-motions for summary judgment.  ECF

14   Nos. 19, 23.  The Court, having reviewed the administrative record and the parties'

15   briefing, is fully informed.  For the reasons discussed below, the Court denies

16   Plaintiff's motion, ECF No. 19, and grants Defendant's motion, ECF No. 23.

17   _____

18   [1] To protect the privacy of plaintiffs in social security cases, the undersigned

19   identifies them by only their first names and the initial of their last names.  *See*

20   LCivR 5.2(c).

     ORDER - 1

1

**JURISDICTION**

2     The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

3

**STANDARD OF REVIEW**

4     A district court's review of a final decision of the Commissioner of Social

5 Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is

6 limited; the Commissioner's decision will be disturbed "only if it is not supported

7 by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

8 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a

9 reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

10 (quotation and citation omitted). Stated differently, substantial evidence equates to

11 "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

12 citation omitted). In determining whether the standard has been satisfied, a

13 reviewing court must consider the entire record as a whole rather than searching

14 for supporting evidence in isolation. *Id.*

15     In reviewing a denial of benefits, a district court may not substitute its

16 judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

17 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one

18 rational interpretation, [the court] must uphold the ALJ's findings if they are

19 supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

20 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§

ORDER - 2

404.1502(a), 416.920(a).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

ORDER - 3

activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC),

ORDER - 4

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

ORDER - 5

step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant

numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*,

700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On October 10, 2017, Plaintiff applied for Title XVI supplemental security

income benefits alleging an amended disability onset date of October 10, 2017.  Tr.

22, 98, 194-209.  The application was denied initially, and on reconsideration.  Tr.

119-23, 124-27.  Plaintiff appeared before an administrative law judge (ALJ) on

September 4, 2019.  Tr. 40-80.  On September 24, 2019, the ALJ denied Plaintiff's

claim.  Tr. 19-37.

At step one of the sequential evaluation process, the ALJ found Plaintiff has

not engaged in substantial gainful activity since October 10, 2017.  Tr. 24.  At step

two, the ALJ found that Plaintiff has the following severe impairments: obesity,

low back pain, depression, and post-traumatic stress disorder (PTSD).  Tr. 24.

At step three, the ALJ found Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of a listed

impairment.  Tr. 25.  The ALJ then concluded that Plaintiff has the RFC to perform

light work with the following limitations:

> Regarding postural limitations, [Plaintiff] has no limitations in the
> ability to balance but is limited to occasionally (up to 1/3 of the

ORDER - 6

workday) climb ladders, ropes or scaffolds; and all other postural activities frequently (up to 2/3 of the workday). Regarding mental abilities, [Plaintiff] has the ability to understand, remember or apply information that is simple and routine, commensurate with SVP 2. Regarding interaction with others, [Plaintiff] would work best in an environment in proximity to, but not close cooperation with, coworkers and supervisors, and would work best in an environment away from the public. [Plaintiff] does, however, have the ability to interact appropriately with coworkers, supervisors or the public. Regarding the ability to concentrate, persist or maintain pace, [Plaintiff] has the ability, with legally required breaks, to focus attention on work activities and stay on task at a sustained rate; complete tasks in a timely manner; sustain an ordinary routine; regularly attend work; and work a full day without needing more than the allotted number or length of rest periods. Regarding the ability to adapt or manage; [Plaintiff] would work best in an environment that is routine and predictable, but does have the ability to respond appropriately, distinguish between acceptable and unacceptable work performance; or be aware of normal hazards and take appropriate precautions.

Tr. 26-27.

At step four, the ALJ found Plaintiff has no past relevant work. Tr. 32. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as, office cleaner, marker, and printed circuit board assembly. Tr. 33. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application through the date of the decision. *Id.*

On June 15, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated the medical opinion evidence;

2. Whether the ALJ conducted a proper step-two analysis;

3. Whether the ALJ conducted a proper step-three analysis;

4. Whether the ALJ properly evaluated Plaintiff's symptom claims;

5. Whether the ALJ conducted a proper step-five analysis.

ECF No. 19 at 7.

## DISCUSSION

**A. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in her consideration of the opinions of Stephen Rubin, Ph.D., and Patrick Metoyer, Ph.D.  ECF No. 19 at 9-16.

As an initial matter, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of*

ORDER - 8

*Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20

C.F.R. § 416.920c.  The new regulations provide that the ALJ will no longer "give

any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*,

2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §

416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all

medical opinions or prior administrative medical findings from medical sources.

20 C.F.R. § 416.920c(a) and (b).  The factors for evaluating the persuasiveness of

medical opinions and prior administrative medical findings include supportability,

consistency, relationship with the claimant (including length of the treatment,

frequency of examinations, purpose of the treatment, extent of the treatment, and

the existence of an examination), specialization, and "other factors that tend to

support or contradict a medical opinion or prior administrative medical finding"

(including, but not limited to, "evidence showing a medical source has familiarity

with the other evidence in the claim or an understanding of our disability

program's policies and evidentiary requirements").  20 C.F.R. § 416.920c(c)(1)-

(5).

      Supportability and consistency are the most important factors, and therefore

the ALJ is required to explain how both factors were considered.  20 C.F.R. §

416.920c(b)(2).  Supportability and consistency are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence
> and supporting explanations presented by a medical source are to

support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2).  The ALJ may, but is not required to, explain how

the other factors were considered.  20 C.F.R. § 416.920c(b)(2).  However, when

two or more medical opinions or prior administrative findings "about the same

issue are both equally well-supported ... and consistent with the record ... but are

not exactly the same," the ALJ is required to explain how "the other most

persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R.

§ 416.920c(b)(3).

The parties disagree over whether Ninth Circuit case law continues to be

controlling in light of the amended regulations, specifically whether the "clear and

convincing" and "specific and legitimate" standards still apply.  ECF No. 24 at 1-2;

ECF No. 23 at 3-4.  "It remains to be seen whether the new regulations will

meaningfully change how the Ninth Circuit determines the adequacy of [an] ALJ's

reasoning and whether the Ninth Circuit will continue to require that an ALJ

provide 'clear and convincing' or 'specific and legitimate reasons' in the analysis

of medical opinions, or some variation of those standards."  *Gary T. v. Saul*, No.

ORDER - 10

1  EDCV 19-1066-KS, 2020 WL 3510871, at *3 (C.D. Cal. June 29,

2  2020) (citing *Patricia F. v. Saul*, No. C19-5590-MAT, 2020 WL 1812233, at *3

3  (W.D. Wash. Apr. 9, 2020)).  "Nevertheless, the Court is mindful that it must defer

4  to the new regulations, even where they conflict with prior judicial precedent,

5  unless the prior judicial construction 'follows from the unambiguous terms of the

6  statute and thus leaves no room for agency discretion.'"  *Gary T.,* 2020 WL

7  3510871, at *3 (citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet*

8  *Services*, 545 U.S. 967, 981-82 (2005); *Schisler v. Sullivan*, 3 F.3d 563, 567-58 (2d

9  Cir. 1993) ("New regulations at variance with prior judicial precedents are upheld

10  unless 'they exceeded the Secretary's authority [or] are arbitrary and

11  capricious.'").

12       There is not a consensus among the district courts as to whether the "clear

13  and convincing" and "specific and legitimate" standards continue to apply.  *See,*

14  *e.g.*, *Kathleen G. v. Comm'r of Soc. Sec.*, 2020 WL 6581012, at *3 (W.D. Wash.

15  Nov. 10, 2020) (applying the specific and legitimate standard under the new

16  regulations); *Timothy Mitchell B., v. Kijakazi*, 2021 WL 3568209, at *5 (C.D. Cal.

17  Aug. 11, 2021) (stating the court defers to the new regulations); *Agans v. Saul*,

18  2021 WL 1388610, at *7 (E.D. Cal. Apr. 13, 2021) (concluding that the new

19  regulations displace the treating physician rule and the new regulations control);

20  *Madison L. v. Kijakazi*, No. 20-CV-06417-TSH, 2021 WL 3885949, at *4-6 (N.D.

Cal. Aug. 31, 2021) (applying only the new regulations and not the specific and

legitimate nor clear and convincing standard).  This Court has held that an ALJ did

not err in applying the new regulations over Ninth Circuit precedent, because the

result did not contravene the Administrative Procedure Act's requirement that

decisions include a statement of "findings and conclusions, and the reasons or basis

therefor, on all the material issues of fact, law, or discretion presented on the

record."  *See, e.g., Jeremiah F. v. Kijakazi*, No. 2:20-CV-00367-SAB, 2021 WL

4071863, at *5 (E.D. Wash. Sept. 7, 2021).  Nevertheless, it is not clear that the

Court's analysis in this matter would differ in any significant respect under the

specific and legitimate standard set forth in *Lester v. Chater*, 81 F.3d 821, 830-31

(9th Cir. 1995).

*1.  Dr. Rubin*

At the hearing, Dr. Rubin testified and rendered an opinion on plaintiff's

level of functioning.  Tr. 48-55.  He testified that at psychological evaluations

Plaintiff has described "a number of symptoms" and that "the question is whether

or not there's other objective evidence for these symptoms."  Tr. 49.  He opined

that based on his review of the records, including psychological evaluations in

2017 and 2018, there is "consistent evidence of depression" under Listing 12.04A1

with evidence of a depressive disorder with depressed mood, diminished interest in

almost all activities, sleep disturbance, decreased energy, feelings of worthlessness,

ORDER - 12

1  difficulty concentrating, and at times thoughts of suicide.  Tr. 49, 51-52.  He

2  opined she also "show[s] a group of symptoms we usually recognize as PTSD,"

3  noting her exposure to serious injury or violence, experience of flashbacks,

4  avoidance of certain external reminders of events, disturbance of mood and

5  behavior and increases in arousal, hypervigilance, and reactivity.  Tr. 52-53.  He

6  noted she has reported PTSD symptoms consistently in evaluations, including

7  flashbacks, hypervigilance, and nightmares and that "if we accept the fact that

8  she's had a very unusual childhood, and that she was prostituted and had many

9  traumatic events, I think there is support for [Listing] 12.15."  Tr. 50.  Dr. Rubin

10  opined she did not meet or equal a listing.  Tr. 51.  He opined her impairments

11  caused her moderate limitations in understanding, remembering, or applying

12  information, moderate limitation in interacting with others, moderate limitation in

13  maintaining concentration, persistence and pace, and moderate limitation in in

14  adapting or managing herself.  Tr. 53.

15      Dr Rubin explained that while she has talked about suicide, she has never

16  been hospitalized, and that while she reports psychotic symptoms such as

17  hallucinations several times in the records, there is "not a lot of objective

18  evidence" in support of her claims; he explained he did not see much evidence of

19  mania in records and opined that there was not objective evidence supporting a

20  bipolar disorder under Listing 12.04A2.  Tr. 49, 52.

ORDER - 13

1    Dr. Rubin opined the "question of severity was a real issue in this case."  Tr.

2  50.  He explained that while she does not have a good work history, she can drive,

3  take care of most activities of daily living, and she "does function most days,

4  except she does sleep quite a bit and watch television, and participate somewhat in

5  domestic activities."  Tr. 50.  He further opined "I think she has depression.  I think

6  she has PTSD symptoms.  I'm not completely in belief that she has a panic

7  disorder, at least in terms of her functioning, and I don't think that these things are

8  overwhelming for her to function."  Tr. 51.

9    When questioned by the ALJ about the limitations found by the state agency

10  doctors, Dr. Rubin agreed with the state agency assessment that she would be

11  capable of performing simple, routine tasks; she could interact with the public and

12  coworkers on an infrequent, routine, and superficial basis; and she should have a

13  routine, predictable work environment.  Tr. 53-54.  The ALJ found Dr. Rubin's

14  testimony persuasive.

15    First, the ALJ noted Dr. Rubin is a specialist, that he had knowledge of SSA

16  disability programs, and that he had the opportunity to review the entire

17  longitudinal record.  Tr. 30.  A medical source's specialization, familiarity with the

18  other evidence in the claim and understanding of SSA's disability program's

19  policies and evidentiary requirements are relevant considerations in determining

20  the persuasiveness of an opinion.  20 C.F.R. § 416.920c(c)(4)-(5).  The ALJ

ORDER - 14

reasonably considered these additional factors in finding Dr. Rubin's testimony persuasive.

Next, the ALJ found the "objective and clinical basis for [Dr. Rubin's] opinion was well explained … and consistent with the lack of abnormalities found on the mental status evaluations contained in this record."  Tr. 30.  Consistency and supportability are the two most important factors when considering the persuasiveness of medical opinions.  20 C.F.R. § 416.920c(b)(2).  The more relevant objective evidence and supporting explanations that support a medical opinion, the more persuasive the medical opinion is.  20 C.F.R. § 416.920c(c)(1).  The more consistent an opinion is with the evidence from other sources, the more persuasive the opinion is.  20 C.F.R. § 416.920c(c)(2).  Here, Dr. Rubin explained he reviewed the record in its entirety and offered his opinion of Plaintiff's level of functioning; and when questioned further by the ALJ and Plaintiff's counsel at the hearing, he supported his testimony with citation to the record, including findings from psychological evaluations and mental health appointments.  *See* Tr. 44, 48-55, 56-57.  While he did not perform his own clinical interview, Dr. Rubin briefly questioned Plaintiff at the hearing.  Tr. 45-47.  While Plaintiff contends Dr. Rubin failed to adequately review the medical evidence, especially in regard to bipolar disorder, ECF No. 19 at 14-15, Defendant points out Dr. Rubin did acknowledge this diagnosis and discussed it at the hearing.  ECF No. 23 at 8.  Dr. Rubin testified

that sometimes Plaintiff's providers diagnosed major depression and sometimes

bipolar disorder, and that in his opinion while there was a great deal of evidence in

the records for depression, there was not objective evidence of bipolar disorder; he

testified that other Plaintiff's subjective report of symptoms, "I don't see evidence

for it." Tr. 52.  The ALJ noted Dr. Rubin explained his analysis of the Listings and

he had the opportunity to review the entire medical record.  Based upon his

testimony he also appeared well acquainted with Plaintiff's history and her

functioning, including family life and activities of daily living.  The ALJ

reasonably determined the objective and clinical basis for Dr. Rubin's opinion was

well supported.

The ALJ also found Dr. Rubin's testimony consistent with the lack of

abnormalities found on mental status exam, noting generally normal findings from

mental status exams in June 2017, November 2017, December 2017, February

2018, August and November 2018, and May 2019.  Tr. 30.  Plaintiff argues the

ALJ's findings are not supported because the ALJ cites to exams where there were

some abnormal findings; Plaintiff notes her December 2017 report of depressed

mood and of auditory, visual, and tactile hallucinations and observations from a

mental status exam in May 2019 including unkempt appearance, agitated activity,

pressured speech, her report of hallucinations, and the provider's observation of

her tangential thought process.  ECF No. 19 at 15-16.  Although the December

2017 mental status findings support Plaintiff's reports of depressed mood and auditory, visual, and tactile hallucinations, the provider also noted all other findings were within normal limits at that time, including speech, thought process, perception, thought content, cognition, insight, and judgment; the provider also indicated no delusions were reported.  Tr. 315.  Additionally, while the ALJ acknowledges she had abnormal findings on mental status exam in May 2019, the ALJ notes she had a recent methamphetamine relapse and was experiencing significant stress from threat of eviction that day.  Tr. 30, 332, 341-42.  The ALJ points out that a friend paid her rent and by the next day mental status exam findings were generally within normal limits; she was observed to be irritable, but her speech was clear, thought process was logical, and although she reported auditory and visual hallucinations, she did not report delusions and her thought content, cognition, judgement, and insight were observed to be within normal limits.  Tr. 346-47.  Review of the record reveals similar objective findings, and the ALJ reasonably found Dr. Rubin's opinion persuasive because it was consistent with lack of abnormalities on mental status exam.

Finally, the ALJ concluded Dr. Rubin's opinion was consistent with the June 2018 prior administrative finding by Dr. Eisenhauer.  Tr. 30.  Consistency is one of the most important factors an ALJ must consider when determining how persuasive a medical opinion is.  20 C.F.R. § 416.920c(b)(2).  The more consistent

1    an opinion is with the evidence from other sources, the more persuasive the

2    opinion is.  20 C.F.R. § 416.920c(c)(2).  In June 2018, Dr. Eisenhauer opined that

3    Plaintiff's impairments and psychological symptoms were "not so severe that they

4    would prevent claimant from being able to sustain three step tasks in a reasonably

5    consistent manner within a 40 hour workweek on a regular and continuing basis."

6    Tr. 112.  Dr. Eisenhauer opined Plaintiff was able to interact appropriately with the

7    public and coworkers when interactions are infrequent, routine, and superficial,

8    and Plaintiff was able to interact with a supervisor to ask and accept simple

9    instructions; and "she retains the capacity to cope with the minimal changes in an

10   otherwise routine work setting with predictable tasks."  *Id.*  She noted Plaintiff's

11   substance use, indicating that "marijuana could at times impact her awareness of

12   and judgement about hazards."  *Id.*  Dr. Rubin testified he agreed with Dr.

13   Eisenhauer, explaining "I don't think a highly competitive or stressful situation

14   would be good.  I think it would increase the chances of severe symptomatology,

15   but I think moderate interactions or occasional interactions … she can handle."  *Id.*

16   Dr. Rubin also testified that he agreed with the state agency findings limiting

17   Plaintiff to simple, routine tasks, interacting with the public and coworkers on an

18   infrequent, routine, and superficial basis.  *Id.*  The ALJ reasonably found the

19   opinions of Dr. Rubin and Dr. Eisenhauer persuasive because they were consistent

20   and based on review of the longitudinal record.

ORDER - 18

1

*2. Dr. Metoyer*

On February 10, 2018, Dr. Metoyer conducted a mental evaluation and rendered an opinion of Plaintiff's functioning. Tr. 322-26. Dr. Metoyer diagnosed her with PTSD; panic disorder; major depressive disorder; recurrent, moderate, with psychotic features; and (rule out) schizophrenia. Tr. 325. He opined Plaintiff appears to have the ability to reason and understand, has some adaption skills, her remote memory is intact, and her sustained concentration and persistence are adequate. Tr. 326. He opined her ability to interact with coworkers and the public is likely moderately to severely impaired; and due to her PTSD, anxiety, mood symptoms and auditory hallucinations and tendency to isolate herself from others, her ability to maintain regular attendance in the workplace is moderately to severely impaired; her ability to complete a normal work day or work week without interruption of PTSD, anxiety, mood symptoms and auditory hallucinations is likely moderately to severely impaired; and her ability to deal with the usual stress encountered in the workplace is markedly impaired if it involves persistent activity, complex tasks, task pressure, interacting with other individuals. *Id.* The ALJ found Dr. Metoyer's opinion partially persuasive. Tr. 31.

First, the ALJ found Dr. Metoyer's significant limitations were inconsistent with the mental status exam he performed at the time. Tr. 31. The more relevant

ORDER - 19

objective evidence and supporting explanations that support a medical opinion, the more persuasive the medical opinion is. 20 C.F.R. § 416.920c(c)(1). Upon mental status exam, Dr. Metoyer observed Plaintiff was dressed appropriately, there was no evidence of psychomotor agitation or retardation, and she was cooperative and engaged throughout the evaluation. Tr. 324. She stated she was anxious, agitated, down and depressed, and Dr. Metoyer observed her affect was congruent with her stated mood and that she was tearful during the evaluation; she denied homicidal ideation and current suicidal ideation, however, and while she reported a history of auditory hallucinations, she denied history of delusions. *Id.* Dr. Metoyer observed her speech was non-pressured and within normal limits, her thought process was goal directed, and she was oriented. Tr. 324-25. Remote memory, recent memory, immediate memory, fund of knowledge, and concentration appeared normal; she was able to correctly spell "world" forward and backward, able to follow a three-step command without difficulty, and able to follow the conversation. Tr. 325. While Dr. Metoyer noted some abnormalities, including Plaintiff's report she was depressed, down, and anxious, and he observed her affect was congruent with her reported mood, his other findings upon mental status exam were generally within normal limits, Tr. 324-25, and the ALJ reasonably found his opinion of marked to severe limitations inconsistent with his objective findings. The ALJ's conclusion

Dr. Metoyer's opinion was only partially persuasive because it was inconsistent with his own mental status findings is supported by substantial evidence.

The ALJ found Dr. Metoyer's opinion less persuasive than the opinions of Dr. Eisenhauer and Dr. Rubin. Tr. 31. As discussed *supra*, the ALJ reasonably found the opinions of Dr. Eisenhauer and Dr. Rubin persuasive because they were consistent with each other, generally supported by objective findings throughout the record, and Dr. Rubin had the opportunity to review the entire medical record. Tr. 30-31. Even if the medical opinion evidence could be interpreted more favorably to Plaintiff, if it is susceptible to more than one rational interpretation, the ALJ's ultimate conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The ALJ's determination that the opinions of Dr. Rubin and Dr. Eisenhauer were more persuasive than Dr. Metoyer's opinion is supported by substantial evidence. Plaintiff is not entitled to remand on this issue.

**B. Step Two**

Plaintiff contends the ALJ erred by failing to identify a panic/anxiety disorder and bipolar disorder as severe impairments. ECF No. 19 at 16-17. At step two of the sequential process, the ALJ must determine whether the claimant

ORDER - 21

suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities.  20 C.F.R. § 416.920(c).

To establish a severe impairment, the claimant must first demonstrate that the impairment results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical or laboratory diagnostic techniques.  20 C.F.R. § 416.921.  In other words, the claimant must establish the existence of the physical or mental impairment through objective medical evidence (*i.e.*, signs, laboratory findings, or both) from an acceptable medical source; the medical impairment cannot be established by the claimant's statement of symptoms, a diagnosis, or a medical opinion.  20 C.F.R. § 416.921.

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work…."  Social Security Ruling (SSR) 85-28 at *3.  Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers, and usual work situations; and dealing

ORDER - 22

with changes in a routine work setting.  20 C.F.R. § 416.922(a); SSR 85-28.[2]

Step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Plaintiff argues the ALJ erred by failing to identify a panic/anxiety disorder and bipolar disorder as severe impairments.  ECF No. 19 at 16-17.  At step two, the ALJ noted her history of mental health treatment with diagnoses including bipolar disorder and a panic disorder during the period at issue.  *Id.*  At the hearing, Dr. Rubin testified that based on his review of the record, the mental health diagnoses with the most support, including objective findings, were depression and PTSD; he testified although Plaintiff reported hallucinations, there was not a lot of objective evidence in support of her reports, and he also explained he did not see much

---

[2] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

ORDER - 23

1    evidence of mania or other objective evidence supporting a bipolar disorder.  Tr.

2    25, 29, 49, 52.  He further opined he did not believe she had a panic disorder, "at

3    least in terms of her functioning."  Tr. 51.  As discussed *supra*, the ALJ reasonably

4    found Dr. Rubin's testimony persuasive.

5        Plaintiff does not point to any specific limitations caused by the impairments

6    that the ALJ failed to account for in the RFC.  As such, Plaintiff has not met her

7    burden in demonstrating her impairments are severe nor that the ALJ harmfully

8    erred in finding the impairments non-severe.  Plaintiff is not entitled to remand on

9    these grounds.

10    **C. Step Three**

11        Plaintiff contends the ALJ erred at step three by failing to conduct an

12    adequate analysis and failing to find Plaintiff "disabled as meeting or equaling a

13    Listed impairment."  ECF No. 19 at 17-19.  At step three, the ALJ must determine

14    if a claimant's impairments meet or equal a listed impairment.  20 C.F.R. §

15    416.920(a)(4)(iii).

16        The Listing of Impairments "describes for each of the major body systems

17    impairments [which are considered] severe enough to prevent an individual from

18    doing any gainful activity, regardless of his or her age, education or work

19    experience."  20 C.F.R. § 416.925.  "Listed impairments are purposefully set at a

20    high level of severity because 'the listings were designed to operate as a

ORDER - 24

1  presumption of disability that makes further inquiry unnecessary.'" *Kennedy v.*

2  *Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S.

3  521, 532 (1990)).  "Listed impairments set such strict standards because they

4  automatically end the five-step inquiry, before residual functional capacity is even

5  considered." *Kennedy,* 738 F.3d at 1176.  If a claimant meets the listed criteria for

6  disability, she will be found to be disabled.  20 C.F.R. § 416.920(a)(4)(iii).

7  　　　　"To *meet* a listed impairment, a claimant must establish that he or she meets

8  each characteristic of a listed impairment relevant to his or her claim." *Tackett,*

9  180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 416.925(d).  "To *equal* a

10  listed impairment, a claimant must establish symptoms, signs and laboratory

11  findings 'at least equal in severity and duration' to the characteristics of a relevant

12  listed impairment . . ." *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting

13  20 C.F.R. § 404.126(a)).  "If a claimant suffers from multiple impairments and

14  none of them individually meets or equals a listed impairment, the collective

15  symptoms, signs and laboratory findings of all of the claimant's impairments will

16  be evaluated to determine whether they meet or equal the characteristics of any

17  relevant listed impairment." *Id*.  However, "[m]edical equivalence must be based

18  on medical findings," and "[a] generalized assertion of functional problems is not

19  enough to establish disability at step three." *Id*. at 1100 (quoting 20 C.F.R. §

20  404.1526(a)); 20 C.F.R. § 416.926(a).

ORDER - 25

The claimant bears the burden of establishing her impairment (or combination of impairments) meets or equals the criteria of a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). "An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." SSR 17-2P, 2017 WL 3928306, at *4 (effective March 27, 2017).

Here, the ALJ found that Plaintiff's impairments and combinations of impairments did not meet or equal any listings, noting that "specific attention was directed to sections 1.00 and 12.00 of the listing of impairments dealing with … mental disorders." Tr. 25-26. Plaintiff contends the ALJ failed to provide an adequate analysis as "she provided no rationale whatsoever and cited no evidence of record," and "provide[d] nothing more than a conclusory, boilerplate finding that [Plaintiff] did not meet any Listings." ECF No. 19 at 18-19. However, there is no requirement that the ALJ's discussion of the evidence must occur at the step three determination. *Lewis v. Apfel*, 236 F.3d 503, 513-14 (9th Cir. 2001) (finding that the ALJ "discussed and evaluated the evidence" that claimant did not meet a listing, even though that discussion did not take place "under the heading 'Findings'"). Here, under the step three finding the ALJ explained Plaintiff did not

meet or equal the severity of any Listed impairment, that specific attention was directed to section 12.00, for mental disorders, and the ALJ also referenced the testimony of psychological expert Dr. Rubin, who opined at the hearing that Plaintiff did not meet or equal the criteria of Listings 12.04 and 12.15.  Tr. 25-26. Factual findings later in the ALJ's decision describe evidence with sufficient specificity, including Dr. Rubin's testimony as discussed *supra*, adequately supporting the ALJ's step three determination throughout the decision.

While Plaintiff contends the ALJ failed to specifically address listing 12.06 at step three, the ALJ did not find panic or anxiety severe based on the evidence of record including the testimony of the medical expert, Dr. Rubin, who noted there was little objective evidence to support her symptoms.  Tr. 48-55.  An ALJ is not required to discuss every Listing and explain "why a claimant fails to satisfy every different section of the [L]isting," so long as the ALJ's "'evaluation of the evidence' is an adequate statement of the 'foundations on which the ultimate factual conclusions are based.'"  *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990).  Here, as Defendant points out, the ALJ found that Plaintiff did not satisfy the paragraph B and C criteria of Listings 12.04 and 12.15, which are the same as the B and C criteria for Listing 12.06.  ECF No. 23 at 16-17, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06.  It is the ALJ's role to consider the evidence, state an interpretation thereof, and make findings accordingly.  *Tommasetti v.*

*Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The step three findings by the ALJ must also be read in conjunction with the entire ALJ decision. SSR 17-2P, 2017 WL 3928306, at *4. The ALJ relied on the testimony of the psychological expert, which she found persuasive, as the foundation for her step three findings and the ALJ further explained this testimony and supporting evidence throughout the decision, discussing the medical records and medical opinions related to Plaintiff's mental impairments at length. *See* Tr. 28-31. The ALJ's analysis in its entirety as to Plaintiff's mental health impairments permits the Court to meaningfully review the ALJ's finding that Plaintiff's mental health impairments did not meet or equal the criteria of the mental health listings.

Further, courts will not find an ALJ has erred in determining whether combined impairments equal a listed impairment unless the Plaintiff has offered a "plausible theory" of medical equivalency. *See Kennedy*, 738 F.3d at 1176-77 (citing *Lewis*, 236 F.3d at 514). Here, Plaintiff has failed to articulate any of her impairments (or combination of impairments) meets or equals the criteria of any listed impairment and has not met the burden of demonstrating she meets or equals any listing.

Finally, Plaintiff argues the ALJ failed to consider opinion evidence at step three, including the opinion of Dr. Metoyer and a statement from Plaintiff's husband. ECF No. 19 at 18-19. As discussed *supra*, the ALJ properly considered

the persuasiveness of Dr. Metoyer's opinion later in the decision.  Contrary to

Plaintiff assertion that "the ALJ provided no indication" she considered the

statement of Plaintiff's husband, the ALJ noted she had considered the lay witness

statement, and that under the new regulations "I am also not required to articulate

how evidence from nonmedical sources, such as the lay witness statement of the

claimant's husband at Exhibit 11E, is considered."  Tr. 30, *see* 20 C.F.R. §

416.920c(d).  Further, on this record any failure to address the statement would be

harmless because, as Defendant points out, the information in the statement is

similar to Plaintiff's subjective complaints.  *Compare e.g.*, Tr. 58-72 *with* Tr. 279.

As discussed *infra*, the ALJ gave clear and convincing reasons to reject Plaintiff's

symptom testimony, and any error in rejecting her husband's similar statement is

harmless.  *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir.

2009) (ALJ may reject lay testimony that essentially reproduces the claimant's

discredited testimony); *see also Molina*, 674 F.3d at 1222 ("[A]n ALJ's failure to

comment upon lay witness testimony is harmless where the same evidence that the

ALJ referred to in discrediting the claimant's claims also discredits the lay

witness's claims.").  Plaintiff is not entitled to remand on this basis.

The ALJ's determination that Plaintiff's mental impairments did not meet or

equal a Listed impairment at step three is supported by substantial evidence.

ORDER - 29

**D. Plaintiff' Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her symptom claims. ECF No. 19 at 19-20. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

ORDER - 30

explain why it discounted claimant's symptom claims)).  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529I, 416.929I.  The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's

ORDER - 31

1  "assertion of total disability under the Social Security Act is not supported by the

2  weight of the evidence."  Tr. 28.

3      *1. Inconsistent Objective Medical Evidence*

4      The ALJ found Plaintiff's symptom claims were inconsistent with the

5  objective medical evidence.  Tr. 28-29.  An ALJ may not discredit a claimant's

6  symptom testimony and deny benefits solely because the degree of the symptoms

7  alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261

8  F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir.

9  1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400

10  F.3d 676, 680 (9th Cir. 2005).  However, the objective medical evidence is a

11  relevant factor, along with the medical source's information about the claimant's

12  pain or other symptoms, in determining the severity of a claimant's symptoms and

13  their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2),

14  416.929(c)(2).

15      The ALJ found that the medical records during the relevant period do not

16  support Plaintiff's contention of disabling mental health limitations.  Tr. 28-29.

17  For example, the ALJ notes while Plaintiff has reported hallucinations, the

18  psychological expert Dr. Rubin testified there is not objective evidence to support

19  her claims.  Tr. 29.  At the consultative exam with Dr. Metoyer in 2019, while she

20  reported history of auditory hallucinations/hearing voices, which improved with

ORDER - 32

medication, she denied delusions or any other type of hallucinations. Tr. 322-23. The ALJ noted she had not been hospitalized for mental health symptoms and although she reports difficulty concentrating, "there is no evidence of cognitive difficulties on any of the mental status exams in this record." Tr. 29 (citing Tr. 290-91, 297, 315, 324-25, 364, 478). While the ALJ acknowledged that she reports depression and has been tearful at some exams, and that at times there have been abnormal objective findings including pressured speech, the ALJ noted mental status exams have been generally within normal limits. Tr. 30, *see* Tr. 291, 297, 324-25. Additionally, the ALJ noted abnormal mental status findings in May 2019 occurred around the time of a methamphetamine relapse and other stressors, including threat of eviction. Tr. 30, *see* Tr. 332, 341-42. The ALJ noted after a friend paid her rent, within a few days mental status findings were again generally within normal limits; she presented as irritable and while she reported audio and visual hallucinations, no delusions were observed, thought content was within normal limits, she was cooperative and cognition, insight, and judgement were observed to be within normal limits. Tr. 346-47. It is the ALJ's responsibility to resolve conflicts in the medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed. *Rollins*, 261 F.3d at 857. The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if

ORDER - 33

the "evidence is susceptible to more than one rational interpretation, the ALJ's

decision should be upheld."  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198

(9th Cir. 2008) (internal quotation marks omitted).  On this record, the ALJ

reasonably concluded that the objective medical evidence is not consistent with

Plaintiff's complaints of disabling symptoms.  This finding is supported by

substantial evidence and was a clear and convincing reason to discount Plaintiff's

symptom complaints.

### 2.  *Lack of Treatment/Improvement with Treatment*

The ALJ noted Plaintiff dropped out of treatment for a time, and that her

symptoms increased without treatment and improved with medication.  Tr. 28-29.

An unexplained, or inadequately explained, failure to seek treatment or follow a

prescribed course of treatment may be considered when evaluating the claimant's

subjective symptoms.  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  The

effectiveness of treatment is also a relevant factor in determining the severity of a

claimant's symptoms.  20 C.F.R. § 416.913(c)(3); *see Warre v. Comm'r of Soc.

Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti*, 533 F.3d at 1040 (a

favorable response to treatment can undermine a claimant's complaints of

debilitating pain or other severe limitations).

While Plaintiff alleges disabling mental health limitations, she has a limited

medical record and has not received consistent mental health treatment; records

ORDER - 34

from 2018, for example, show her mental health provider closed her case after they

lost contact with Plaintiff.  Tr. 359-60.  She has reported her longest time in

counseling was three months, and in May 2019, she reported it was her fifth time

"trying to get help but I will start then quit coming."  Tr. 335, 356.  The ALJ noted

that records show she reported medication helped her symptoms, including

reducing hallucinations.  Tr. 29 (citing Tr. 322-23).  She testified Geodon made her

tired, but also reduced her symptoms.  Tr. 65.  On this record, the ALJ reasonably

concluded that Plaintiff's symptom claims were inconsistent with her lack of

mental health treatment and improvement with treatment including medication.

These findings are supported by substantial evidence and are clear and convincing

reasons to discount Plaintiff's symptom complaints.

### 3. Activities of Daily Living

The ALJ found Plaintiff's symptom claims are inconsistent with her

activities of daily living.  Tr. 28-29.  The ALJ may consider a claimant's activities

that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can

spend a substantial part of the day engaged in pursuits involving the performance

of exertional or non-exertional functions, the ALJ may find these activities

inconsistent with the reported disabling symptoms.  *Fair*, 885 F.2d at 603; *Molina*,

674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to

be eligible for benefits, the ALJ may discount a claimant's symptom claims when

ORDER - 35

the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

Here, the ALJ noted Plaintiff was able to drive alone to the store and her appointments, and that she enjoyed arts and crafts, family time, and her dog. Tr. 28-29 (citing Tr. 289, 322, 327). The ALJ noted her husband and his mother support and help her with her children, but that she is able to care for her personal needs, shop, cook, and she helps her children with homework. Tr. 29. At the 2019 hearing she testified she had five children, ages one through 11; she testified that they go to the river "a lot." Tr. 28, 67-68. She testified she drove to the hearing, and that she uses social media, including Facebook on her phone. Tr. 68. At the appointment with Dr. Metoyer, she reported living with her grandparents increased her symptoms, but that activities such as drawing, doing puzzles, and taking her children to the park provided some distraction and relief. Tr. 324. While she reported some difficulty with personal care, hygiene, and household tasks due to low motivation, she also reported she cleaned some, and could go to the grocery store, counseling, and school. Tr. 325.

While Plaintiff contends the record shows ongoing severe symptomology that interrupts her daily activities, ECF No. 19 at 19-20, as discussed *supra*, there are very limited records and few objective findings to support her symptom

reports.  While Plaintiff offers a different interpretation of the evidence, the ALJ reasonably found Plaintiff's activities of daily living are inconsistent with her claims of disabling mental health limitations.  This was a clear and convincing reason, when combined with the other reasons offered, to discount Plaintiff's symptom reports.

The ALJ set forth clear and convincing reasons, supported by substantial evidence, to reject Plaintiff's symptom claims.  Plaintiff is not entitled to remand on these grounds.

**E. Step Five**

Plaintiff contends the ALJ erred at step five.  ECF No. 19 at 20-21.  At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to establish that 1) the claimant can perform other work, and 2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran*, 700 F.3d at 389.  In assessing whether there is work available, the ALJ must rely on complete hypotheticals posed to a vocational expert.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations.  *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).  The hypothetical should be "accurate, detailed, and supported by the medical record."  *Tackett*, 180 F.3d at 1101.

1    The hypothetical that ultimately serves as the basis for the ALJ's

2    determination, i.e., the hypothetical that is predicated on the ALJ's final RFC

3    assessment, must account for all the limitations and restrictions of the claimant.

4    *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2011).  As

5    discussed above, the ALJ's RFC need only include those limitations found credible

6    and supported by substantial evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217

7    (9th Cir. 2005) ("The hypothetical that the ALJ posed to the VE contained all of

8    the limitations that the ALJ found credible and supported by substantial evidence

9    in the record.").  "If an ALJ's hypothetical does not reflect all of the claimant's

10   limitations, then the expert's testimony has no evidentiary value to support a

11   finding that the claimant can perform jobs in the national economy."  *Id*.  However,

12   the ALJ "is free to accept or reject restrictions in a hypothetical question that are

13   not supported by substantial evidence."  *Greger v. Barnhart*, 464 F.3d 968, 973

14   (9th Cir. 2006).  Therefore, the ALJ is not bound to accept as true the restrictions

15   presented in a hypothetical question propounded by a claimant's counsel if they are

16   not supported by substantial evidence.  *Magallanes v. Bowen*, 881 F.2d 747, 756-

17   57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986).  A

18   claimant fails to establish that a step five determination is flawed by simply

19   restating an argument that the ALJ improperly discounted certain evidence, when

20

the record demonstrates the evidence was properly rejected. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

Plaintiff contends the ALJ erred by failing to provide limitations for all of Plaintiff's impairments in the RFC and the hypothetical to the vocational expert. ECF No. 19 at 20-21. However, Plaintiff's argument is based entirely on the assumption that the ALJ erred in his analysis of the opinion evidence. As addressed *supra*, the ALJ properly assessed the medical opinion evidence of Dr. Rubin, Dr. Metoyer, and the state agency psychological consultant.

For reasons discussed throughout this decision, the ALJ's consideration of the medical opinion evidence is legally sufficient and supported by substantial evidence. The ALJ has the discretion to evaluate and weigh the evidence and the Plaintiff's alternative interpretation of the evidence does not undermine the ALJ's analysis. The ALJ did not err in assessing the RFC or finding Plaintiff capable of performing work existing in the national economy, and the RFC adequately addresses the medical opinions in this record. Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

ORDER - 39

1. Plaintiff's Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 23**, is **GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED February 4, 2022.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 40